Rie MUÑOZ and Rie Muñoz,
Ltd., Plaintiffs,

v.

ALBUQUERQUE A.R.T. CO., and
Mark C. French, Defendants.

No. J92–27 CIV.

United States District Court,
D. Alaska.

May 26, 1993.

David C. Crosby, Steven T. Seward, Wickwire, Greene, Crosby & Seward, Juneau, AK, for plaintiffs.

Paul M. Hoffman, Robertson, Monagle & Eastaugh, P.C., Juneau, AK, for defendants.

## ORDER

SEDWICK, District Judge.

### JURISDICTION

Plaintiffs seek damages for infringement of copyright and an injunction against further infringement, together with an order requiring defendants to "deliver for destruction" various items of personal property associated with the alleged infringement. In addition to these federal law claims, plaintiffs seek relief under state law, including treble damages and attorney fees. The court has jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1338.

### FACTS

Plaintiff Rie Muñoz is an artist who resides in Juneau, Alaska, where she paints watercolors depicting Alaskan themes. Plaintiff Rie Muñoz, Ltd. is a corporation owned by Rie Muñoz's son, Juan Muñoz, to which the artist has assigned the relevant copyrights. Defendant Albuquerque A.R.T. Co. ("ART") operates a business in New Mexico which consists of "the mounting of purchased art work images (e.g., notecards, lithographs) on tiles for sale to others." Declaration of ART's president, Arthur Clauss, at p. 1. Defendant Mark C. French is a vice-president of ART, whose duties embrace sales and general management, including the "handling of all sales of Rie Muñoz art images (i.e., notecards) mounted on tiles by [ART] and communicating with purchasers of these tiles." Declaration of Mark French at p. 1. French has not engaged in the making or selling of tiles bearing art images except as an employee of ART. Plaintiff's complaint and amended complaint

allege that ART is a New Mexico corporation and that French resides in New Mexico. Defendants do not assert otherwise.

ART accepted Rie Muñoz notecards from a business in Juneau named Latitude 58. ART then affixed the notecards to 8″ by 8″ ceramic tiles and covered them with a transparent protective layer of acrylic or epoxy at its facility in New Mexico. At least 961 tiles were then sold to Latitude 58 in Juneau. The notecards used by ART were copyrighted and the copyrights assigned by plaintiff Rie Muñoz to plaintiff Rie Muñoz, Ltd.

Juan Muñoz met with Keil and Moretta Rieger, proprietors of Latitude 58, in June of 1991 after learning that Latitude was selling tiles to which Muñoz notecards had been affixed. Construing the declarations of the Riegers and Muñoz most favorably to ART (as the non-moving party), the meeting resulted in the approval of the sale of the tiles then in Latitude's inventory and included a request that Latitude cease further sales of the tiles. The Riegers construed this as a request to cease but not a demand to cease.[1] Thereafter, there was an exchange of letters between counsel for plaintiffs and ART, followed by the complaint in this lawsuit.[2]

## MOTIONS BEFORE THE COURT

Defendants have filed a motion to dismiss which, by way of alternative relief, seeks transfer of this case to the United States District Court in Albuquerque, New Mexico. (Docket 5) The motion asserts that this court lacks personal jurisdiction over defendants. Defendants' motion is based in part upon matters outside the pleadings and will therefore be treated as a motion for summary judgment. Plaintiffs opposed the motion to dismiss and filed a motion for partial summary judgment seeking a permanent injunction against ART. (Docket 9) Plaintiffs' briefing indicates that if the motion is granted and the injunction is issued, then plaintiffs' claims against French and all plaintiffs' other claims may be dismissed without prejudice to plaintiffs' ability to pursue them in state court. Plaintiffs' Memorandum at p. 42. Thus, granting the motion would lead to termination of the lawsuit.

## ISSUES PRESENTED

A. *Personal Jurisdiction and Venue:*

Defendants argue that this case should be dismissed because this court lacks personal jurisdiction over defendants. The reach of this court's jurisdiction over persons may be measured by the law of the forum state subject to limits imposed by due process requirements of the United States Constitution. *Data Disc Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280 (9th Cir.1977).[3] Alaska law extends personal jur-

---

1. The declaration of Mark French recites that, in a conversation whose date and circumstances French cannot recall, one of the Riegers told him Muñoz said that once Latitude bought the notecards they belonged to Latitude, which was free to do whatever it wanted with them, or words to that effect. The Riegers' declarations do not support this, and the court will not consider the hearsay provided by Mr. French. Fed.R.Evid. 802.

2. Defendants filed a Statement of Genuine Issues purporting to list ten disputed issues of material fact. The first issue is whether plaintiffs consented to the tiling of the notecards. The court finds that, at best, the evidence shows consent to the sale of Latitude's inventory. This might be relevant to a damages claim, but there is no evidence of consent to further infringement, something relevant to prospective relief. Defendants alleged factual disputes numbered 2 and 5 both indicate that someone in addition to ART may have tiled Muñoz images. Even if true, the fact remains that ART does not deny that *it* did so.

The issue is perhaps relevant to a damage claim, but not to injunctive relief. Items numbered 3, 4, 6, 7, 9, and 11 do not actually identify disputed facts. Rather, they say that if ART had more information, some of it might shed light on relevant issues. There is no request for further discovery under Rule 56(f) and merely speculating that there may be more information out there somewhere does not create a disputed issue of material fact. The absence of a Rule 56(f) request is not surprising given the "grasping at straws" quality of the issues identified. Item 8 indirectly refers to the dispute between the Riegers and Juan Muñoz over the appearance of the tiles which Muñoz describes as "tacky" and the Riegers as "tasteful and attractive." This issue is simply irrelevant to injunctive relief, although it could have some bearing on a damage claim.

3. *Data Disc* deals with personal jurisdiction in diversity cases. The complaint in the instant matter pleads claims invoking both diversity and federal question jurisdiction. It may be added that, absent a more specific limit imposed by

isdiction to the fullest extent permitted by the Constitution, which reduces inquiry here to ascertaining whether exercising jurisdiction over defendants is consistent with due process. *Insurance Co. of North America v. Marina Salina Cruz,* 649 F.2d 1266 (9th Cir.1981).

■ Existence of personal jurisdiction over defendants in the circumstances of this litigation depends upon application of the three-part test described in *Data Disc:*

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposely avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws. (2) The claim must be one which arises out of or results from the defendant's forum related activities. (3) Exercise of jurisdiction must be reasonable.

557 F.2d at 1287.

Here, there is no question that defendant ART purposely consummated a transaction with a business enterprise operating in the forum and that the continuing commercial interests of ART in its supplier relationship to Latitude 58 contemplated further activities by Latitude 58 in selling ART's handiwork in Alaska. ART was, to the extent of its commercial interest, protected by the laws of Alaska. The claim which plaintiffs assert clearly arises out of ART's activities related to the sale of its products in Alaska. Moreover, it is far too late in the commercial day to assert that it is unreasonable to require a business to answer for its actions in a jurisdiction where it sends its products for use or sale. Certainly those engaged in interstate commercial enterprise have been given "fair warning" that their interstate activities may subject them to suit wherever they choose to send their products. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–73, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). ART is subject to the jurisdiction of the court for purposes of the claims pled by plaintiffs.

■ The question of jurisdiction over defendant French presents different considerations. It appears that everything French did, he did as an employee of ART. He did nothing for his own benefit in Alaska. While he was the person who carried out or supervised the actions through which ART chose to take advantage of business opportunities in Alaska, those activities were clearly those of ART, not French. There is nothing which shows that French derived any personal economic benefit from the sales by ART to Latitude 58. To illustrate the difference in the roles of ART and French, suppose Latitude 58 had not paid for the tiles. On the facts in this record, French could not recover the price from Latitude 58, but ART clearly could. In short, exercising jurisdiction over French would be contrary to the first two of the *Data Disc* criteria.

Even if French's activities could somehow be construed to meet the first two *Data Disc* requirements, the third criterion is not present. This court is mindful of the substantial economic burden of defending any lawsuit, and particularly one which is pled in a court several thousand miles from a defendant's residence. It is plainly unreasonable to expect an individual who acted in the role of a mere employee to come from New Mexico to Alaska to defend a lawsuit which arises out of his employer's business activities rather than his own.

■ Defendants also argue that this action must proceed in New Mexico by citing 28 U.S.C. § 1400(a) which says:

> Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights may be instituted in the district in which the defendant or his agent resides or may be found.

The statute lays venue in any district where a defendant "may be found." There are many cases which may be cited for the proposition that so long as a defendant is subject to personal jurisdiction in a given place, the defendant "may be found" there for purposes of this statute. *E.g., Johannsen v. Brown,* 788 F.Supp. 465, 469 (D.Or.1992); *Store Decor Division of Jas International, Inc.,* 767

---

statute or rule, federal question jurisdiction would appear to be co-extensive in a geographic

sense with diversity jurisdiction. *See* Fed. R.Civ.P. 41(e).

F.Supp. 181, 185 (N.D.Ill.1991); *Sollinger v. Nasco International, Inc.,* 655 F.Supp. 1385, 1389 (D.Vt.1987). Therefore, consistent with the court's finding that it has jurisdiction over ART, venue as to ART is proper under 28 U.S.C. § 1400(a).

Lack of jurisdiction over defendant French requires the court to consider whether it should order transfer of plaintiffs' claims against ART to New Mexico because the claims against French could also proceed there. The gravamen of plaintiffs' claims is directed at ART, not French. It was ART which contracted with Latitude 58, whose facilities were used to make the tiles, and whose economic interests were advanced by the activities of which plaintiffs complain. Plaintiffs have advised the court that if injunctive relief against ART is awarded, plaintiffs are prepared to dismiss their claims against French (as well as their damage claims against ART). In short, the vital dispute is between plaintiffs and ART, not plaintiffs and French. In deciding whether venue in Alaska or New Mexico is more appropriate for the claims against ART, the court concludes that lack of personal jurisdiction over French is of little significance.

In the interest of justice and for the convenience of parties and witnesses, an action may be transferred to another district in which it might also have been filed. 28 U.S.C. § 1404(a). In considering requests for change of venue, courts commonly consider an array of factors. Those frequently cited are gathered in Wright, Miller & Cooper, *Federal Practice and Procedure:* Jurisdiction 2d at §§ 3848–3854. The first of these is the choice of forum by plaintiff. According to the treatise, the significance accorded this factor varies greatly from court to court.

From this court's perspective, plaintiffs' choice of forum must be considered an important factor. Failure to assign this factor considerable significance risks inviting litigation over where the parties will litigate as a sort of routine prelude to every diversity lawsuit's main theme. Nothing untoward with respect to the attorneys who have appeared in this case (who are recognized as principled and competent advocates) is im-

plied. Rather, when ascribing the weight to be accorded standards of general application, the increasingly pugnacious nature of litigation in this country must be recognized.

The convenience of the parties is listed in the statute as a factor to be considered, but it is of little help in the case at bar. It is obvious that Alaska is more convenient to plaintiffs and New Mexico to defendant ART. The court could perhaps attempt some Benthamite analysis of whose convenience produces the greatest overall good, but it seems more practical to view this factor as one to be applied in cases involving multiple parties. It provides essentially no guidance in this case.

The treatise lists location of counsel as a factor, but suggests this is of little moment. Here, it may be noted that all parties have counsel in Juneau, Alaska. This factor has no bearing on the question at hand.

According to the treatise, the convenience of witnesses is often described as the single most important of the factors to be considered in deciding upon a change of venue. At this stage of the proceeding, the parties have not filed witness lists and the issue is not addressed in the briefing. The court cannot determine who may be witnesses if this case is tried. This consideration is not meaningful under the circumstances.

The location of books and records may also be a factor to consider. Here, there has been no suggestion of the existence of significant documentary evidence beyond that which has already been filed as exhibits to the pending motions. This factor appears to be of no significance in this case.

Finally, Wright, Miller & Cooper, *op. cit.,* speaks at § 3854 of various additional elements that courts consider. Among these is a concern to avoid a multiplicity of lawsuits. Here, there is no indication that transferring the pending lawsuit to New Mexico will somehow avoid additional litigation. Neither the concern to avoid multiple lawsuits, nor the other elements mentioned in § 3854 of the treatise appears to apply to the venue question in this case.

On balance, this court finds that a change of venue under 28 U.S.C. § 1404(a) is not

**314**

warranted. Plaintiff's choice of forum is entitled to substantial weight and none of the other relevant factors points to New Mexico. Alaska seems to be at least as logical a choice for resolution of the dispute between plaintiffs and ART as would be New Mexico.

In summary: Plaintiffs' claims against defendant French will be dismissed for lack of personal jurisdiction. This court has personal jurisdiction of ART. Venue for plaintiffs' claims against ART is proper in Alaska. There is no justification for a change of venue to New Mexico.

### B. Summary Judgment Standards:

The party bearing the ultimate burden of proving an issue at trial bears the initial burden of demonstrating the grounds for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party points out why no genuine issues of fact exist, the party resisting summary judgment must set forth "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553. In resolving the motion for summary judgment, all reasonable inferences will be drawn in favor of the non-movants. *Anderson v. Liberty Lobby*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Where the factual context makes the non-moving party's claim implausible, however, that party must come forward with more persuasive evidence to defeat summary judgment than ordinarily would be required. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### C. Copyright Infringement:

Plaintiffs urge that the case at bar is controlled by the decision in *Mirage Editions, Inc. v. Albuquerque A.R.T. Co.*, 856 F.2d 1341 (9th Cir.1988), *cert. denied*, 489 U.S. 1018, 109 S.Ct. 1135, 103 L.Ed.2d 196 (1989). There, copyright holders complained that, by transferring art images created by Patrick Nagel onto ceramic tiles, ART had violated the copyrights of his widow and Mirage. In *Mirage*, ART was found to have engaged in essentially the same production process employed to create the Muñoz tiles. However, instead of attaching notecards to ceramic tiles, ART attached photos cut from a commemorative book published by the copyright holders' licensee. The result was that ART violated not only the copyrights assigned by the deceased artist, but also the copyright of the book publisher.

ART argues that a notecard mounted on a ceramic tile is not a "derivative work" for purposes of the copyright law because it amounts to nothing more than a display of the art work, no different than a print or painting placed in a frame. ART glosses over the fact that the statute defines a derivative work in significant part as follows:

> A "derivative work" is a work based upon one or more preexisting works such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation or any other form in which a work may be recast, transformed or adapted.

17 U.S.C. § 101.

The court cannot agree that permanently affixing a notecard to a ceramic tile is not recasting, transforming or adapting the original art work. Placing a print or painting in a frame and covering it with glass does not recast or transform the work of art. It is commonly understood that this amounts to only a method of display. Moreover, it is a relatively simple matter to remove the print or painting and display it differently if the owner chooses to do so. Neither of these things is true of the art work affixed to a ceramic tile. Moreover, tiles lend themselves to other uses such as trivets (individually) or wall coverings (collectively). Finally, the Ninth Circuit has expressly held that ART's process of transferring art images to tiles does constitute the creation of a derivative work of art in violation of the copyright laws. *Mirage* at 856 F.2d 1343–44.[4]

---

4. ART points out that a treatise on copyright law, *Nimmer on Copyrights*, criticizes the *Mirage* decision at § 3.0 for failing to realize the similarity between mounting on tiles and simple framing behind glass. As noted above, this court finds significant distinctions between framing and per-

*Mirage* also disposes of ART's defense based on the "first sale" doctrine. As the appellate court wrote:

> We recognize that under the "first sale" doctrine ... [ART] can purchase a copy of the Nagel book and subsequently alienate its ownership in that book. However, the right to transfer applies only to the particular copy of the book which appellant has purchased and nothing else. The mere sale of the book to the appellant without a specific transfer by the copyright holder of its exclusive right to prepare derivative works, does not transfer that right to appellant.

In the case at bar Latitude 58 purchased the notecards and then ART mounted them. This court can find no reason why the fact that Latitude 58 was involved as the initial buyer should alter the application of *Mirage*. The decision in *Mirage* compels this court's conclusion: ART violated the Muñoz copyrights.

#### D. *Laches, waiver, and estoppel:*

ART urges that plaintiffs' complaint should be dismissed on the basis of laches, waiver, and estoppel. For the reasons stated above, plaintiffs have demonstrated a valid basis for summary judgment. To defeat plaintiffs' motion, ART must set forth "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553. ART alleges that plaintiffs: (1) sold notecards to Latitude 58 for over a year and a half; (2) knew that Latitude 58 was imprinting the notecards onto ceramic tiles for resale; and (3) gained this knowledge as early as November 1990, the time when Latitude 58 first sent notecards to ART to be tiled. ART concludes that plaintiffs' failure to object to Latitude's use of the notecards sooner encouraged the purchase of more notecards to tile and resell, thereby profiting plaintiffs.

manently affixing a work of art to a substance which lends itself to uses other than merely hanging on a wall. Moreover, this court is bound to apply the law established in this circuit regardless of the views entertained by those who write treatises.

#### 1. Laches

Laches is an equitable defense committed to the sound discretion of the court. *Russell v. Price*, 612 F.2d 1123, 1125 (9th Cir.), *cert. denied*, 446 U.S. 952, 100 U.S. 2919, 64 L.Ed.2d 809 (1980). To establish a defense of laches, the defendant must prove that plaintiff inexcusably delayed in bringing its action and such delay prejudiced ART. *Trustees for Alaska Laborers Construction Industry Health and Sec. v. Ferrell*, 812 F.2d 512 (9th Cir.1987). ART relies on *Universal Pictures Co. v. Harold Lloyd Corp.*, 162 F.2d 354, 372 (9th Cir.1947) in support of its argument:

> It is a reasonable rule that the copyright owner may not deliberately delay his prosecution and thereby speculate without risk with another's money to determine the success of the exploitation....

The facts of this case fail to demonstrate that plaintiffs inexcusably delayed in bringing this action to enforce its copyrights. Importantly, ART does not actually offer evidence to establish when plaintiffs first learned that Latitude 58 was using Muñoz's notecards to create tiled art work. Indeed, it is Juan Muñoz's statement that he first learned of the tiling in the early summer of 1991 that provides the only evidence of timing.

Mr. Muñoz confronted the Riegers, who own Latitude 58, after discovering the tile situation. Muñoz attempted to reach a compromise by which plaintiffs would allow Latitude 58 to sell the existing tiles upon the condition that Latitude not order or sell any more tile with Rie Muñoz art work. At that point plaintiffs believed that they had amicably resolved the problem. Approximately a year later, Mr. Muñoz discovered that Latitude 58 had continued to order additional different ceramic tiles featuring Ms. Muñoz's art work. Plaintiffs sent a letter to the Riegers dated August 21, 1992, and another to ART dated July 28, 1992, requesting that they discontinue the sale and production of the tile.[5]

---

5. These facts are taken from the Declaration of Juan Muñoz and are not contravened by any affidavit or documentary evidence from defendants.

The court does not find inexcusable delay in Muñoz's conduct. Indeed, it appears that the Riegers' conduct induced the plaintiffs into a belief that no further ceramic tiles would be made from Rie Muñoz notecards. Upon discovery that the Riegers and ART continued to produce ceramic tiles from the notecards, plaintiffs took prompt action (two letters and filing the present action) to halt the production and sale of the ceramic tiles.[6] The court finds that plaintiffs were not silent in the face of the alleged infringement, but rather took timely steps to resolve the matter.

Additionally, laches is not a bar to the relief plaintiffs seek in its motion for summary judgment. Plaintiffs request that this court enjoin defendants from producing additional ceramic tiles with Rie Muñoz art work. The doctrine of laches does not bar prospective enforcement of a copyright. *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 105 (9th Cir.), *cert. denied* 364 U.S. 882, 81 S.Ct. 170, 5 L.Ed.2d 103 (1960).

## 2. Waiver

■■■ ART claims that plaintiffs waived their ability to enforce their copyright through silence. Waiver is the "intentional relinquishment of a known existing right with knowledge of its existence and the intent to relinquish it." *United States v. King Features Entertainment, Inc.*, 843 F.2d 394, 399 (9th Cir.1988). ART's attempt to establish waiver suffers the same fatal flaws that preclude application of the doctrine of laches. Plaintiffs have not acted inconsistently with their copyrights to Rie Muñoz art work. Plaintiffs sought to stop production of the

tiled art work upon discovering that Latitude 58 was selling such products. Plaintiffs have never authorized the production of tiles with Rie Muñoz art work, although they may have authorized Latitude 58 to sell the existing stock of such tiles as of the date of Mr. Muñoz's conversation with the Riegers. Therefore, the court concludes that plaintiffs never relinquished their copyright to Rie Muñoz art work, or their ability to enforce it.

## 3. Estoppel

To establish estoppel ART must prove "(1) [t]he party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir.1960). Here, not even the first of the criteria is met. ART offers no evidence that plaintiffs actually knew of the continuing production of Muñoz tiles after Juan Muñoz's conversation with the Riegers. Construed most favorably to ART, the conversation between Muñoz and the Riegers authorized the sale of an existing inventory, but it authorized no further production of Muñoz tiles. At most, the conversation might estop a damage claim. It simply has no bearing on the equitable relief now sought.[7] No basis for estoppel can be found in the facts presented.

## IT IS THEREFORE ORDERED THAT:

For the reasons set forth above, the court grants in part and denies in part defendants'

---

6. ART argues that summary judgment is not proper because there are disputed questions of fact surrounding the conversations between Mr. Muñoz and the Riegers. Specifically, ART argues that Mr. Muñoz only "requested" that Latitude 58 not sell or order additional tiles made from Ms. Muñoz's notecards rather than demanding that they cease those activities. Regardless of the terminology used, Mr. Muñoz took affirmative steps to protect the copyrights. The fact that Mr. Muñoz may have "requested," rather than "demanded," that Latitude 58 stop infringing on the copyright does not present a material question of fact that precludes summary judgment to enjoin future infringements.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248–49, 106 S.Ct. at 2510.

7. Even if one could read some vague, equivocal acquiescence into the copyright holders' conduct (which the court does not), such behavior seems especially inadequate where, as here, the party seeking to raise an estoppel had a duty of inquiry. ART must have known the notecards were copyrighted, because the copyright claim was printed on the notecards and ART's prior litigation experience certainly would have sensitized it be on the lookout for copyrights. Therefore, ART had a duty to inquire before using the notecards. *See Hampton v. Paramount Pictures Corp.*, 279 F.2d 100 (9th Cir.1960).

Motion to Dismiss or Transfer (Docket No. 5) as follows: the court **GRANTS** the request to dismiss defendant French, **DENIES** the request to dismiss ART, and **DENIES** the request for transfer to New Mexico. For the reasons set forth above, the court **GRANTS** plaintiffs' Motion for Summary Judgment (Docket No. 9) for an injunction prohibiting further copyright infringement by ART.

Counsel for plaintiffs shall submit a proposed form of injunction. Counsel for plaintiffs shall also confer with counsel for defendants and submit a proposed stipulation dismissing all of plaintiffs' other claims pursuant to the representation at page 42 of Plaintiffs' Memorandum. Unless the parties can identify issues which the court must first address, the stipulation should also indicate the parties' agreement that a final judgment may be entered so that ART may promptly pursue its appellate rights if it chooses to do so.