**Annie LEE and Annie Lee & Friends Company, Inc., Plaintiffs,**

v.

**DECK THE WALLS, INC. and A.R.T. Company a/k/a Albuquerque A.R.T. Company, Defendants.**

**No. 94 C 4606.**

United States District Court, N.D. Illinois, Eastern Division.

May 1, 1996.

---

Philander Scott Neville, Jr., Geraldine C. Simmons, Chicago, IL, for Annie Lee, Annie Lee & Friends Company, Inc.

Philip M. Kolehmainen, Joseph Krieger, Joan Pennington, Mason, Kolehmainen, Rathburn & Wyss, Chicago, IL, for A.R.T. Company.

Richard Eugene Dick, Law Offices of Dick & Harris, Chicago, IL, Deborah L. Taylor, Wilner & Taylor, Houston, TX, for Deck The Walls, Inc.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court are the parties' cross motions for summary judgment. For the following reasons, the court dismisses Defendant Deck The Walls, Inc. ("DTW") and grants summary judgment in favor of Defendant A.R.T. Company ("ART") and against Plaintiffs.

### I. *Facts*

The facts are undisputed. Defendant DTW operates as a franchisor for retail art stores. DTW sells art works to the public through its individual retail stores. DTW operates a retail store in North Riverside, Illinois at which it sells various Annie Lee art works. Defendant ART is a wholesaler of decorative ceramic tiles.

Plaintiff Annie Lee is an individual artist who draws and publishes works of art. Annie Lee distributes these works of art through Annie Lee and Friends, Inc. (collectively "Annie Lee"), a store located in Glenwood, Illinois. Annie Lee is the author and creator of fifteen works of art which are the subject of this lawsuit. These works are registered with the Register of Copyrights. Annie Lee published these art works on notecards. DTW's North Riverside, Illinois store purchased 430 such notecards from Annie Lee. DTW sent the notecards to ART who mounted each work onto a ceramic tile. The process of mounting the art work onto the ceramic tiles is relatively simple. ART trimmed the card images, adhered the cards to a ceramic tile, and covered the image with a clear epoxy resin. ART did not reproduce any of Annie Lee's cards. DTW later repurchased the notecards (now mounted on the tiles) from ART and sold them in its store.

Annie Lee commenced this action alleging that DTW and ART engaged in acts tantamount to copyright infringements, unfair competition and a breach of contract. Subsequently, Annie Lee amended the complaint by withdrawing the breach of contract claim. This court then dismissed the unfair competition count. Thus, only a single count, a copyright infringement claim, remains.

### II. *Discussion*

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of submitting affidavits and other evidentiary material to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when

578

"there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). However, where—as here—the parties concede that no genuine issue of fact exists, the court has a duty to apply the law to the facts and summarily grant judgment in favor of the deserving party. *Casey v. Uddeholm Corp.,* 32 F.3d 1094, 1099 (7th Cir.1994).

## A. Dismissal of DTW

Federal Rule of Civil Procedure 4(m) states:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant.

ART brought to the court's attention that Annie Lee neglected to serve the Second Amended Complaint upon DTW. Annie Lee did not address that fact in its response. The court, therefore, finds that Annie Lee was on notice of its failure to properly serve DTW and, *sua sponte,* dismisses DTW as a party to this lawsuit.

## B. Copyright Claim

The purpose of the Copyright Act is to reward the creators of copyrighted works and to promote "broad public availability of literature, music, and the other arts." *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 710, 104 S.Ct. 2694, 2706, 81 L.Ed.2d 580 (1984). There are two elements to a claim for copyright infringement: (1) plaintiff's ownership of the copyright, and (2) defendant's act or acts of "copying [the] constituent elements of the [copyrighted] work that are original." *I.A.E., Inc. v. Shaver,* 74 F.3d 768, 774 (7th Cir.1996) (citing *Feist Publications, Inc. v. Rural Telephone Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 1295–96, 113 L.Ed.2d 358 (1991)). "Copying" means infringing upon a copyright owner's exclusive rights. 17 U.S.C. § 106. The Copyright Act of 1976 ("Copyright Act"), 17 U.S.C. § 101, grants copyright owners exclusive rights to reproduce the copyrighted work, prepare de-rivative works based upon the copyrighted work, distribute copies of the copyrighted work, and to display the copyrighted work. 17 U.S.C. § 106. However, a copyright holder's distribution right is not absolute. The "First Sale Doctrine," codified at 17 U.S.C. § 109, allows an individual who legally acquired a lawfully-made copy of a copyrighted work to sell or otherwise transfer that particular copy as he or she wishes. *Id.* Annie Lee bases its claim on its exclusive right "to prepare derivative works based upon [its] copyrighted work" and "to distribute copies ... of the copyrighted work by sale or other transfer of ownership." 17 U.S.C. § 106(2)–(3).

At the outset, the court acknowledges the existence of two similar cases from the Ninth Circuit, *Mirage Editions, Inc. v. Albuquerque A.R.T. Co.,* 856 F.2d 1341 (9th Cir.1988) and *Munoz v. Albuquerque A.R.T. Co.,* 829 F.Supp. 309 (D.Alaska 1993), both of which involve the instant Defendant and the same ceramic tile mounting process. Most noteworthy of the two, the *Munoz* case involved strikingly similar facts: ART purchased an artist's notecards, mounted the notecards onto ceramic tiles pursuant to the same mounting process, and distributed the resulting ceramic tiles. Citing the *Mirage Editions* case as authority, the district court in *Munoz* found that the Defendant's acts constitute copyright infringement. *Munoz,* 829 F.Supp. at 316–17. The parties to the instant action make the same arguments as in *Munoz.* Yet, while the facts and arguments in the *Munoz* case and the case *sub judice* are analogous, the outcomes are much different.

### 1. Derivative Work

Since both parties agree that Annie Lee held valid copyrights to the fifteen works of art allegedly "copied" by ART, the court need only address the second element of copyright infringement, whether ART engaged in "copying" Annie Lee's works as defined by the Copyright Act. Annie Lee first argues that each ceramic tile produced by ART is a "derivative work" which Annie Lee had the exclusive right to prepare. A "derivative work" is a "work based upon one

or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. Moreover, a "derivative work" is a work "consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship." *Id.*

In support of its argument, Annie Lee contends that the tiles fall within the definition of derivative work in that they are either art reproductions or, at the very least, are the result of recasting, transforming or adapting the original work. Annie Lee cites to the *Mirage Editions* and *Munoz* cases as persuasive authority.[1] ART responds that, while the two cases do in fact support Annie Lee's argument, the courts involved were in error and reached a result contrary to established case law and the Copyright Act. ART argues that there is no difference between the mounting process and the framing process. Rather than a "derivative work," ART argues that the process is a mere method of using and displaying the purchased copies of Annie Lee's art work. Thus, this case turns on whether each ceramic tile is (1) a "work" derived from Annie Lee's work or (2) a mere medium of display. The *Munoz* court rejected ART's argument that the ceramic tile is a method of display. In so holding, the district court made the following distinction between framing and mounting a work onto ceramic tile:

> Placing a print or painting in a frame and covering it with glass does not recast or transform the work of art. It is commonly understood that this amounts to only a method of display. Moreover, it is a relatively simple matter to remove the print or painting and display it differently if the owner chooses to do so. Neither of these things is true of the art work affixed to a ceramic tile. Moreover, tiles lend themselves to other uses such as trivets (individually) or wall coverings (collectively).

*Munoz,* 829 F.Supp. at 314. In a footnote, the *Munoz* court again noted the "significant distinctions between framing and permanently affixing to a substance which lends itself to uses other than merely hanging on a wall." *Id.* at 314 n. 4. The court went on to reject the applicability of the First Sale Doctrine, and found the ceramic tiles to be copyright infringements.

Respectfully, this court disagrees with the *Munoz* court; the court finds the proffered distinctions between framed art and "tiled art" unconvincing and without support.[2]

---

1. The court notes that it is not bound by decisions from other district courts, *Mueller v. Reich,* 54 F.3d 438, 441 (7th Cir.1995), or from circuit courts other than the Seventh Circuit. *Flynn v. Sandahl,* 58 F.3d 283, 289 (7th Cir.1995).

2. The court is not alone; Melvin Nimmer, a renowned copyright expert, wrote in his treatise:

> In Mirage ... as a necessary step in applying the first step, the court ruled that a derivative work was created.... [T]he court held that removing reproductions of art works from a 'compilation of selected copyrighted individual art works,' and thereafter mounting those reproductions onto ceramic tile, resulted in the creation of derivative works.... [W]as the court correct in that conclusion? Even apart from the questionable contribution of intellectual labor in the physical activities of page-removal and mounting ... it is difficult to imagine that the artist (or his widow, a plaintiff in the case) could take separately copyrighted individual art works and, merely by reproducing them in a compilation and then taking the reproduced pages out of the compilation and remounting them, thereby obtain a new copyright in the same art works. For the sole contribution added in this process is the method of mounting; choosing ceramic rather than cardboard as the backing material should scarcely be construed as a "meaningful" variation in the eyes of the Copyright Act. It is therefore submitted that the court's analysis was in error. A later case against the same defendant ruled that mounting an artist's lithographs and notecards onto tiles was similarly infringing. This case did not even involve disassembling a collective work into which the authorized prints had been gathered; instead, it involved an activity not far afield from mounting and framing. The court distinguished the activity at bar because "it is commonly understood that [framing] amounts to only a method of display" and because "it is a relatively simple matter to remove the print or painting [from the frame] and display it differently if the owner chooses to do so." Neither proposition is supported in the court's opinion; even if true, the question remains unanswered how tile-mounting creates a meaningful variation that itself could support copyright protection.

Both framing and tiling utilize the same works purchased from the copyright holder and do not involve "copying" as defined by the Copyright Act. Both processes involve trimming the original image to fit it to the appropriate size of the tile or frame respectively, securing the image to the tile or mat with some type adhesive or clip, and covering the art with a clear covering, epoxy resin and glass respectively.

The court chooses to focus on the art work itself, not on the material on which the work was mounted or the ultimate use to which the tiles "lend themselves." The mode of affixation of the art work onto the mat or tile is insignificant.[3] In addition, the eventual manner of display and "use" of a product is not dispositive of the instant inquiry; whether the ceramic tile is used as a wall decoration, a trivet, or floor tiles is not a variable which should be used to define a "derivative work" under the Copyright Act.

It is well established that copyright protection "has never accorded the copyright owner complete control over all possible uses of his work." *Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417, 432, 104 S.Ct. 774, 784, 78 L.Ed.2d 574 (1984). *See also White–Smith Music Publishing Co. v. Apollo Co.,* 209 U.S. 1, 19, 28 S.Ct. 319, 324, 52 L.Ed. 655 (1908). The Supreme Court stated that a person does not infringe a copyright by using the work in an unauthorized manner which occurs outside the scope of the copyright holder's exclusive rights. *Twentieth Century Music Corp. v. Aiken,* 422 U.S. 151, 155, 95 S.Ct. 2040, 2043, 45 L.Ed.2d 84 (1975). Instead, the only relevant query for the court is whether ART's ceramic tile process transforms, adapts or recasts Annie Lee's original work into a *new and different* original work. *Paramount Pictures v. Video Broadcasting Systems,* 724 F.Supp. 808, 821 (D.Kan.1989). The court, thus, finds that the end result of this case hinges on whether the alleged new "work," the ceramic tile, contains sufficient originality, as required by the Constitution and the Copyright Act, *Mid America Title Co. v.*

*Kirk,* 59 F.3d 719, 721 (7th Cir.1995) (citing *Feist,* 499 U.S. at 347, 111 S.Ct. at 1288), for it to become a derivative work.

Annie Lee argues that, with regard to copyright infringement claims, the use by a court of an originality requirement is inappropriate. The Ninth Circuit agrees; though, this court does not. The Ninth Circuit held that the Copyright Act's "derivative work" definition is, in fact, two separate statutory definitions. *Galoob Toys, Inc. v. Nintendo of America, Inc.,* 964 F.2d 965, 967–68 (9th Cir.1992). According to the Ninth Circuit, a party seeking to register a copyright in a derivative work must be read in conjunction with, and meet the requirements found in, § 102(a). *Id.* Thus, a copyright "seeker" in the Ninth Circuit must show originality and fixation in a tangible medium of expression; yet, a party bringing a copyright action for an alleged infringement of its exclusive rights to create derivative works need not. *Id.* Respectfully, the Ninth Circuit's determination of a dual definition (1) "risks that courts will naively apply this broad definition to find activities infringing that are more properly viewed as altogether beyond the scope of copyright," Edward G. Black & Michael H. Page, *Add–On Infringements: When Computer Add–Ons and Peripherals Should (and Should Not) Be Considered Infringing Derivative Works Under Lewis Galoob Toys, Inc. v. Nintendo of America, Inc. and Other Recent Decisions,* 15 Hastings Comm. & Ent. L.J. 615, 628–29 (1993), and (2) ignores the definition of a "derivative work" found in § 101, in which Congress specifically included an originality requirement.

 The court finds the Second Circuit to support its finding that an alleged infringing "derivative work" must contain sufficient creativity and originality to deem it a copyright infringement. *Woods v. Bourne Co.,* 60 F.3d 978, 993 (2nd Cir.1995). According to the Second Circuit, in order for a work to constitute a "derivative work," it must itself be "independently copyrightable." *Id.* at

1 Nimmer on Copyrights, § 3.03.

**3.** Certainly Congress did not intend that courts look to the type of adhesive, whether it be El-mer's glue, Superglue or tape, to be the fact upon which a copyright infringement issue should be determined.

990. To be copyrightable, "a derivative work must demonstrate the author's originality. Originality is more than merely desirable; it is both a statutory and constitutional requirement." *American Dental Assoc. v. Delta Dental Plans Assoc.*, No. 92 C 5909, 1996 WL 224494, at *7 (N.D.Ill. May 1, 1996). The Supreme Court has consistently held that originality is the *"sine qua non* of Copyright." *Feist*, 499 U.S. at 345, 111 S.Ct. at 1287. "While the standard for originality is low, it does exist." *Id.* at 362, 111 S.Ct. at 1296.

> Originality requires only that the author make the selection or arrangement independently ... and that it display some minimum level of creativity. Presumably, the vast majority of compilations will pass this test, but not all will. There remains a narrow category of works in which the creative spark is utterly lacking or so trivial as to be virtually nonexistent.

*Id.* at 358–59, 111 S.Ct. at 1294–95.

The mundane act of placing notecards onto a ceramic tile falls into the narrow category of works in which no creative spark exists. Thus, the ceramic tiles are not a new and different original work, but the same exact work placed onto a different background. ART did not display any creativity in gluing Annie Lee's work onto the separate surface. ART did not reproduce the images, did not enlarge or diminish the size of the images, and did not make any alteration to the drawings themselves. To the contrary, ART simply glued onto a ceramic tile the exact same notecards DTW purchased from Annie Lee, and placed a clear epoxy resin coating over the entire tile. Since the notecard is in the same "form" as Annie Lee's original work, it necessarily cannot be in a "form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. No intellectual effort or creativity was necessary to transfer the notecard to the tile. It does not meet the definition of a "derivative work."

While not binding authority, this court finds persuasive a finding by the United States Copyright Office. The Supervisor Copyright Examiner of the Visual Arts Section of the Copyright Office rejected ART's copyright application for a purported derivative work entitled Fish Grader. ART created the work by using the same ceramic tile mounting process as is at issue here. In rejecting the application, the Examiner wrote that the "authorship described in ... this application, 'Purchased note card art image deposited on tile and covered with epoxy,' is *not copyrightable*.... Because this work *does not contain any original artistic expression*, we cannot register this claim." Pursuant to the holding in *Woods*, the instant tiles cannot meet the definition of a "derivative work" since they are not independently copyrightable and reflect a simple change in the medium of expression.[4]

The court notes that this is a case of first impression in the Seventh Judicial Circuit. Moreover, with regard to the Copyright Act as amended in 1976, the court notes the marked lack of copyright cases involving a defendant's admitted use or display of a lawfully purchased object. However, an earlier case brought under the Copyright Act of 1909, *C.M. Paula Co. v. Logan*, 355 F.Supp. 189 (N.D.Texas 1973), is analogous and relevant to the instant case. In *Paula*, the defendant purchased greeting cards and note cards, used a chemical film to strip the printed indicia from each original surface on which the images were printed, and applied the image onto a ceramic plaque. The defendant also placed additional coatings over the plaque to provide a "glazed or crackled appearance." In finding that no copyright infringement occurred, the district court noted:

> [e]ach ceramic plaque sold by defendant with a Paula print affixed thereto requires the purchase and use of an individual piece of artwork marketed by the plaintiff. For example, should defendant desire to make one hundred ceramic plaques using the

---

**4.** As William Landes and Richard Posner, now Chief Judge of the Seventh Circuit Court of Appeals, wrote: "[f]or obvious reasons, the derivative work must have some expressive elements not found in the original work; otherwise it would be identical to the original work.... The "mechanical 'translation' of [a] figure into a new medium involves no expression." William M. Landes & Richard A. Posner, *An Economic Analysis of Copyright Law*, 18 J.Legal Studies 325, 355–56 (June 1989).

identical Paula print, defendant would be required to purchase one hundred separate Paula prints. The Court finds that the process here in question does not constitute copying. *See Blazon, Inc. v. DeLuxe Game Corp.*, 268 F.Supp. 416, 434 (S.D.N.Y.1965).

*Paula*, 355 F.Supp. at 191.

While the Act as amended in 1976 involves a more inclusive definition of a "derivative work," the court finds the points made by the *Paula* court to be relevant to the case *sub judice*. For each tile generated by ART, ART must purchase a notecard originally sold by Annie Lee. For one hundred ceramic tiles, ART must purchase one hundred Annie Lee notecards. Applying the Copyright Act of 1976 to the facts at hand, the court reaches the same decision as the *Paula* court.

A more recent case, brought pursuant to the amended Copyright Act, is also analogous. In *Paramount Pictures v. Video Broadcasting Sys.*, 724 F.Supp. 808 (D.Kan. 1989), a producer of motion pictures, which had placed commercials at the beginning of videocassettes, sued another company that placed local business commercials at the beginning of the same videocassettes prior to them being placed at a video rental store. The district court then held that the plaintiff "ha[d] not presented any authority to support the conclusion that the mere addition of a commercial to the front of a videocassette recasts, transforms, or adapts the motion picture into what could represent an 'original

work of authorship'." Thus, the *Paramount* court granted summary judgment in favor of the defendant. *Id.* at 824.

Much like the *Paramount* case, the instant case involves a similar fact pattern: the defendant purchased a copyrighted work, the purchaser made no alterations to the work itself, the purchaser did, however, "surround" the work with additional material, and the purchaser subsequently sold the work with the additions. Thus, following the same reasoning used in *Paramount*, the ceramic tiles do not rise to the level of an original work of authorship. *Id.* Moreover, the instant plaintiff, Annie Lee, has not persuaded the court that the mere addition of surrounding materials represents an "original work of authorship" which rises to the level of an unlawful derivative work.

In sum, the court finds that the ceramic tiles are not "derivative works." ART "did nothing more than compete with [Annie Lee] by reselling individual goods purchased from [Annie Lee] in bulk. Competition is not infringement, even in the market for highly expressive artistic works." Black & Page, *supra* at 631. As such, the court finds that the ceramic tile mounting process utilized by ART cannot, as a matter of law, be found to violate the Copyright Act.[5] Accordingly, the court finds in favor of ART and against Annie Lee.[6]

## 2. First Sale Doctrine

Since the court finds that the ceramic tiles do not violate the Copyright Act, the only remaining issue is whether ART inter-

---

**5.** The court is aware that in the majority of copyright cases, the contested issue is usually whether the defendant "copied," i.e. reproduced, the plaintiff's copyrighted work. When reproduction of a lifelike object is at issue, "a copyright holder must then prove substantial similarity to those few aspects of the work that are expression not required by the idea." *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 508 (7th Cir.1994). However, the instant case is peculiar; the defendant did not reproduce the work, but used the exact work in the mounting process. The court need not apply the "substantial similarity test" since the existence of reproduction is not at issue.

**6.** The court notes that this case, as already discussed, does not involve reproduction. DTW purchased each card used in ART's tile mounting process. Unlike a case involving reproduction,

in which the copyright holder is unable to control the amount of copies ultimately sold by an alleged infringer, Annie Lee was in full control of the amount of copies sold and was able to govern which companies received the notecards. Annie Lee could have prevented ART from performing the ceramic tile process by refusing to sell DTW the notecards in the first case or by entering into a licensing agreement with DTW or ART. Moreover, while this court holds that the ceramic tiles are not "derivative works," and thus Annie Lee does not have the exclusive right to make them, Annie Lee still is permitted by the Copyright to mount its own work onto the ceramic tiles utilizing the same process as ART. Since the ceramic tile mounting process lacks sufficient originality, the process is not copyrightable by ART and can be used by any willing business.

fered with Annie Lee's exclusive right to distribute its copyrighted work. The court finds that ART did not interfere with any such right. Annie Lee initiated the sale of its art notecards, and ART later legally acquired the notecards. ART then simply resold each notecard—albeit in a different manner of display—pursuant to its right, codified at 17 U.S.C. § 109, to sell a legally-acquired work. The First Sale Doctrine "provides, in essence, that once the copyright owner has transferred ownership of a particular copy of the work, the person to whom the copy has been transferred is entitled to dispose of it by sale, rental, or any other means." *Parfums Givenchy v. C&C Beauty Sales,* 832 F.Supp. 1378, 1385 (C.D.Cal.1993) (citing H.R.Rep. No. 1476, 94th Cong., 2d Sess. 79 (1976)).

There is no dispute that the first sale of each of the 430 notecards occurred lawfully. DTW received each notecard in exchange for paying Annie Lee the requested fee. DTW later sold the notecards to ART. The First Sale Doctrine allows the party to whom the tiles have been lawfully transferred, ART, to dispose of them by subsequent sale. ART did just that; ART made no changes, alterations, reproductions, transformations, or adaptations of the notecards and, instead, resold the same notecards using a different method of display. This resale is permissible under the Copyright Act.

### III. *Conclusion*

The court finds that the ceramic tiles produced by ART are not "derivative works" of Annie Lee's copyrighted art. In order to qualify as a "derivative work," there "must be present more than mere cocktail pianist variations" of a musical piece, *Woods v. Bourne Co.,* 841 F.Supp. 118, 121 (S.D.N.Y. 1994), and there must be present more than mere artistic variations to the display of a work of art. The court further finds that ART was lawfully entitled to resell the notecards mounted onto ceramic tile surfaces. Accordingly, the court grants summary judgment in favor of ART and against Annie Lee.

IT IS SO ORDERED.