**PRECIOUS MOMENTS, INC., Plaintiff,**

v.

**LA INFANTIL, INC., et al., Defendants.**

**Civil No. 97–1635 (PG).**

United States District Court,
D. Puerto Rico.

July 29, 1997.

Frank Gotay–Barquet, San Juan, PR (James P. White, Chicago, IL, of counsel), for Plaintiff.

Raúl Olmo–Olmo, Hato Rey, PR, Raymond A. Cabrera, Silvia G. Rico, San Juan, PR, for Defendants.

### *OPINION AND ORDER*

PEREZ-GIMENEZ, District Judge.

#### I. Background

Plaintiff Precious Moments, Inc., is a company engaged in the business of licensing the "Precious Moments" trademark and artwork to licensees who manufacture and distribute numerous products, including such items as greeting cards, figurines, stationery, jewelry,

dolls, and, most significantly for purposes of the instant case, fabrics, baby bedding, and baby accessories. Defendant La Infantil, Inc., is a retail store that sells baby products, including furniture, bedding, clothes, and accessories. Some of the bedding it sells is manufactured by Teresita Martin Sewing Service from authentic, lawfully-acquired Precious Moments fabrics. Defendant Mueblería Andalucía, Inc., is a furniture store that relatively recently began selling baby bedding purchased from La Infantil. Precious Moments brought this action alleging copyright and trademark infringement, unfair competition, and dilution under federal and Puerto Rico law. Currently before the Court is Precious Moments' request for a preliminary injunction.

## II. Discussion

### A. The Standard for a Preliminary Injunction

The standard for granting a preliminary injunction is well known. A court must undertake a four-part analysis that takes into account the following considerations:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) on the public interest.

*Starlight Sugar, Inc. v. Soto,* 114 F.3d 330, 331 (1st Cir.1997) (quoting *Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 15 (1st Cir.1996)). Of these four factors, the probability-of-success component is regarded by the First Circuit "as critical in determining the propriety of injunctive relief." *Lancor v. Lebanon Hous. Auth.,* 760 F.2d 361, 362 (1985). This is especially true in copyright and trademark cases, in which "the key issue is the likelihood of success on the mer-

its because the other decisions will flow from that ruling." *Keds Corp. v. Renee Int'l Trading Corp.,* 888 F.2d 215, 220 (1st Cir. 1989); *see Concrete Mach. Co., Inc. v. Classic Lawn Ornaments, Inc.,* 843 F.2d 600, 611–12 (1st Cir.1988).

### B. The Likelihood of Success on the Merits

#### 1. Copyright

■ Matters in this case have boiled down to a single issue [1] —whether La Infantil may, consistently with the copyright, trademark, and competition laws, use authentic, lawfully acquired Precious Moments fabric to have baby bedding manufactured which it then sells to the public at the La Infantil store.

■ The owner of a copyright enjoys the exclusive right, among others, "(1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; [and] (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106. The copyright owner's right to distribute the work is limited by the "first sale" doctrine, which permits the owner of a legally acquired, lawfully made copy of a work to sell that particular copy without the consent of the copyright holder. 17 U.S.C. § 109(a).[2] The first sale doctrine, however, limits only the distribution rights of the copyright owner; it does not limit the other exclusive rights enumerated in § 106, including the right to prepare derivative works. *Red Baron—Franklin Park, Inc. v. Taito Corp.,* 883 F.2d 275, 280 (4th Cir.1989); *Mirage Editions, Inc. v. Albuquerque A.R.T. Co.,* 856 F.2d 1341, 1344 (9th Cir.1988). The question presented, then, is whether the items manufactured by Teresita Martín Sewing Service from Precious Moments fabric are "deriva-

---

**1.** While the complaint alleged that Defendants were selling counterfeit Precious Moments products, the evidence presented with the motion for a preliminary injunction did not support that allegation and the issue dropped out of the case at the preliminary injunction hearing.

**2.** § 109(a) reads, in relevant part, "Notwithstanding the provisions of section 106(3), the owner of a particular copy or phonorecord lawfully made under this title, or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy or phonorecord."

tive works" infringing on Precious Moments' copyright.

Derivative works are defined as follows:

A "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work."

17 U.S.C. § 101.

Precious Moments relies principally on *Mirage*, in which the Ninth Circuit found that artwork removed from a lawfully-acquired compilation, glued onto a background, and mounted onto individual ceramic tiles for sale were derivative works infringing the copyright in the artwork. Two district courts, both bound by Ninth Circuit precedent, have followed the holding in *Mirage*. *See Greenwich Workshop, Inc. v. Timber Creations, Inc.*, 932 F.Supp. 1210 (C.D.Cal.1996) (matting and framing artwork removed from copyrighted book constituted derivative work infringing copyright in book and artwork); *Munoz v. Albuquerque A.R.T. Co.*, 829 F.Supp. 309 (D.Alaska 1993) (mounting individually sold notecards onto tiles created derivative works infringing copyright), *aff'd*, 38 F.3d 1218 (9th Cir.1994).

While these cases tend to support Precious Moments' position, they have not been well received. A third ceramic-tile case also involving A.R.T. and the same notecard process at issue in *Munoz* reached the opposite result, flatly rejecting *Mirage* and *Munoz*. *See Lee v. Deck the Walls, Inc.*, 925 F.Supp. 576 (N.D.Ill.1996). The *Lee* court held that

for a work to be a "derivative work," it must contain creativity and originality that would make it independently copyrightable. *Id.* at 580–81. Mounting on tile was indistinguishable from mere framing, the court reasoned,[3] and the process was a "mundane act [that] falls into the narrow category of works in which no creative spark exists." *Id.* at 580, 581.

In so holding, the *Lee* court disagreed with the Ninth Circuit's double standard regarding derivative works. The Ninth Circuit requires one seeking a copyright in a derivative work to meet all the requirements of copyrightability but does not require a work to be independently copyrightable in order for it to be considered a derivative work infringing on the underlying work. *Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*, 964 F.2d 965, 967–69 (9th Cir.1992) (fixation in a tangible medium of expression unnecessary for derivative work to infringe). The *Lee* court found that this double standard "(1) 'risks that courts will naively apply this broad definition to find activities infringing that are more properly viewed as altogether beyond the scope of copyright,' and (2) ignores the definition of a 'derivative work' found in § 101, in which Congress specifically included an originality requirement." *Lee*, 925 F.Supp. at 580 (quoting Edward G. Black and Michael H. Page, *Add–On Infringements: When Computer Add–Ons and Peripherals Should (and Should Not) be Considered Infringing Derivative Works Under Lewis Galoob Toys, Inc. v. Nintendo of America, Inc. and Other Recent Decisions*, 15 Hastings Comm. & Ent. L.J. 615, 628–29 (1993)).[4]

*Mirage* and its progeny have been criticized by others as well. *See* 1 Nimmer on Copyrights, § 3.03 (quoted in *Lee*, 925 F.Supp. at 579 n. 2); 2 Paul Goldstein, Copyright § 5.3 at 5:81 (2d ed.1996) (described as "condemning *Mirage* as an unwarranted ex-

---

**3.** The *Munoz* court had attempted to distinguish framing from mounting on tile. *Munoz*, 829 F.Supp. at 314 and n. 4.

**4.** *Galoob* itself is not necessarily inconsistent with *Lee*: *Galoob* involved fixation and relied on the fact that the definition of "derivative work" does not include fixation, *see* 964 F.2d at 968; *Lee*, on the other hand, involved originality, which *is* part of the definition of "derivative

work." Neither *Munoz* nor *Greenwich Workshop* relies on *Galoob*. Reading *Galoob* in conjunction with *Mirage*, however, it appears that the Ninth Circuit also relaxes the originality requirement when considering whether a work is a derivative work for purposes of infringement. Even if *Galoob* was correct with regard to fixation, *Mirage* reads the originality requirement out of the definition of "derivative work."

tension of the Copyright Act" in Mark A. Lemley, *The Economics of Improvement in Intellectual Property Law*, 75 Tex. L.Rev. 989, 1084 n. 144 (April 1997)); Black and Page, *Add–On Infringements*, at 629 (describing *Mirage* as "often criticized"); David Goldberg and Robert J. Bernstein, "What is a Derivative Work? ... Continued," 9/20/96 N.Y.L.J. 3 (col.1) ("[T]he Ninth Circuit approach applied in *Greenwich Workshop* is unsupported by the statutory text.").

This Court agrees with the *Lee* court that *Mirage* and the subsequent cases read the originality requirement out of the definition of "derivative work" and open the door for the most trivial of modifications to generate an infringing derivative work. Applying the proper standard to the case at bar, the Court finds that the necessary element of originality is absent from the items manufactured for La Infantil from the Precious Moments fabric. They therefore do not constitute "derivative works" infringing on Precious Moments' copyright. Precious Moments thus does not carry its burden of showing a likelihood of success on the merits on its copyright claim, and the Court need not consider the remaining requirements for a preliminary injunction.

*2. Trademark and Unfair Competition*

The touchstone of an action for trademark infringement and unfair competition is whether the use of the trademark is likely to cause confusion. *VMG Enters., Inc. v. F. Quesada & Franco, Inc.*, 788 F.Supp. 648, 660 (D.P.R.1992). The evidence presented indicates that the items manufactured for La Infantil from the Precious Moments fabric come with a notice identifying "PMI, Inc." [sic] as the owner of the art and design and "T.M. Sewing Service" presumably as the manufacturer of the bedding, although it does not specify. While La Infantil has not made any false representations, and indeed appears to have attempted to identify the sources of the products accurately, the Court finds that the notice is inadequate to prevent potential confusion as to Precious Moments' sponsorship (or lack thereof) of the products. In addition to being plainly visible to the purchaser, the notice should specify that, apart from the fabric, the items manufac-

tured by T.M. Sewing Service for La Infantil are not in any way connected to Precious Moments, Inc. *See C.M. Paula Co. v. L. Gene Logan*, 355 F.Supp. 189, 193 (N.D.Tex. 1973); *Scarves by Vera, Inc. v. American Handbags, Inc.*, 188 F.Supp. 255, 258 (S.D.N.Y. 1960); *cf. Caterpillar, Inc. v. Nationwide Equip.*, 877 F.Supp. 611 (M.D.Fla.1994).

### III. Conclusion

For the foregoing reasons, plaintiff Precious Moments, Inc.'s, motion for a preliminary injunction (**Dkt. No. 6**) is hereby **DENIED** as to the copyright claim and **GRANTED** as to the trademark and unfair competition claims to the extent set forth above. Defendant La Infantil shall modify the tags included with products manufactured from Precious Moments fabric in accordance with this opinion.

**IT IS SO ORDERED.**