**Annie LEE and Annie Lee & Friends Company, Inc., Plaintiffs–Appellants,**

**v.**

**A.R.T. COMPANY, also known as Albuquerque A.R.T. Company, Defendant–Appellee.**

**No. 96–2522.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 10, 1997.

Decided Sept. 18, 1997.

P. Scott Neville, Jr., Howse, Howse, Neville & Gray, Geraldine C. Simmons (argued), Salone, Simmons & Murray, Chicago, IL, for Plaintiffs–Appellants.

Joan Pennington, Joseph Krieger, Philip M. Kolehmainen, Mason, Kolehmainen, Rathburn & Wyss, Chicago, IL, George J. Netter (argued), Pasadena, CA, for Defendant–Appellee.

Before BAUER, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

EASTERBROOK, Circuit Judge.

Annie Lee creates works of art, which she sells through her firm Annie Lee & Friends. Deck the Walls, a chain of outlets for modestly priced art, is among the buyers of her works, which have been registered with the Register of Copyrights. One Deck the Walls store sold some of Lee's notecards and small lithographs to A.R.T. Company, which mounted the works on ceramic tiles (covering the art with transparent epoxy resin in the process) and resold the tiles. Lee contends that these tiles are derivative works, which under 17 U.S.C. § 106(2) may not be prepared without the permission of the copyright proprietor. She seeks both monetary and injunctive relief. Her position has the support of two cases holding that A.R.T.'s business violates the copyright laws. *Muñoz v. Albuquerque A.R.T. Co.,* 38 F.3d 1218 (9th Cir.1994), affirming without published opinion, 829 F.Supp. 309 (D.Alaska 1993); *Mirage Editions, Inc. v. Albuquerque A.R.T. Co.,* 856 F.2d 1341 (9th Cir.1988). *Mirage Editions,* the only full appellate discussion, dealt with pages cut from books and mounted on tiles; the court of appeals' brief order in *Muñoz* concludes that the reasoning of *Mirage Editions* is equally applicable to works

of art that were sold loose. Our district court disagreed with these decisions and entered summary judgment for the defendant. 925 F.Supp. 576 (N.D.Ill.1996).

Now one might suppose that this is an open and shut case under the doctrine of first sale, codified at 17 U.S.C. § 109(a). A.R.T. bought the work legitimately, mounted it on a tile, and resold what it had purchased. Because the artist could capture the value of her art's contribution to the finished product as part of the price for the original transaction, the economic rationale for protecting an adaptation as "derivative" is absent. See William M. Landes & Richard A. Posner, *An Economic Analysis of Copyright Law*, 17 J. Legal Studies 325, 353–57 (1989). An alteration that includes (or consumes) a complete copy of the original lacks economic significance. One work changes hands multiple times, exactly what § 109(a) permits, so it may lack legal significance too. But § 106(2) creates a separate exclusive right, to "prepare derivative works", and Lee believes that affixing the art to the tile is "preparation," so that A.R.T. would have violated § 106(2) even if it had dumped the finished tiles into the Marianas Trench. For the sake of argument we assume that this is so and ask whether card-on-a-tile is a "derivative work" in the first place.

"Derivative work" is a defined term:

A "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work".

17 U.S.C. § 101. The district court concluded that A.R.T.'s mounting of Lee's works on tile is not an "original work of authorship" because it is no different in form or function from displaying a painting in a frame or placing a medallion in a velvet case. No one believes that a museum violates § 106(2) every time it changes the frame of a painting

that is still under copyright, although the choice of frame or glazing affects the impression the art conveys, and many artists specify frames (or pedestals for sculptures) in detail. *Muñoz* and *Mirage Editions* acknowledge that framing and other traditional means of mounting and displaying art do not infringe authors' exclusive right to make derivative works. Nonetheless, the ninth circuit held, what A.R.T. does creates a derivative work because the epoxy resin bonds the art to the tile. Our district judge thought this a distinction without a difference, and we agree. If changing the way in which a work of art will be displayed creates a derivative work, and if Lee is right about what "prepared" means, then the derivative work is "prepared" when the art is mounted; what happens later is not relevant, because the violation of the § 106(2) right has already occurred. If the framing process does not create a derivative work, then mounting art on a tile, which serves as a flush frame, does not create a derivative work. What is more, the ninth circuit erred in assuming that normal means of mounting and displaying art are easily reversible. A painting is placed in a wooden "stretcher" as part of the framing process; this leads to some punctures (commonly tacks or staples), may entail trimming the edges of the canvas, and may affect the surface of the painting as well. Works by Jackson Pollock are notoriously hard to mount without damage, given the thickness of their paint. As a prelude to framing, photographs, prints, and posters may be mounted on stiff boards using wax sheets, but sometimes glue or another more durable substance is employed to create the bond.

Lee wages a vigorous attack on the district court's conclusion that A.R.T.'s mounting process cannot create a derivative work because the change to the work "as a whole" is not sufficiently original to support a copyright. Cases such as *Gracen v. The Bradford Exchange, Inc.*, 698 F.2d 300 (7th Cir. 1983), show that neither A.R.T. nor Lee herself could have obtained a copyright in the card-on-a-tile, thereby not only extending the period of protection for the images but also eliminating competition in one medium of display. After the ninth circuit held that its

mounting process created derivative works, A.R.T. tried to obtain a copyright in one of its products; the Register of Copyrights sensibly informed A.R.T. that the card-on-a-tile could not be copyrighted independently of the note card itself. But Lee says that this is irrelevant—that a change in a work's appearance may infringe the exclusive right under § 106(2) even if the alteration is too trivial to support an independent copyright. Pointing to the word "original" in the second sentence of the statutory definition, the district judge held that "originality" is essential to a derivative work. This understanding has the support of both cases and respected commentators. E.g., *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486 (2d Cir.1976); Melville B. Nimmer & David Nimmer, 1 *Nimmer on Copyrights* § 3.03 (1997). Pointing to the fact that the first sentence in the statutory definition omits any reference to originality, Lee insists that a work may be derivative despite the mechanical nature of the transformation. This view, too, has the support of both cases and respected commentators. E.g., *Lone Ranger Television, Inc. v. Program Radio Corp.*, 740 F.2d 718, 722 (9th Cir.1984); Paul Goldstein, *Copyright: Principles, Law and Practice* § 5.3.1 (2d ed.1996) (suggesting that a transformation is covered by § 106(2) whenever it creates a "new work for a different market").

Fortunately, it is not necessary for us to choose sides. Assume for the moment that the first sentence recognizes a set of non-original derivative works. To prevail, then, Lee must show that A.R.T. altered her works in one of the ways mentioned in the first sentence. The tile is not an "art reproduction"; A.R.T. purchased and mounted Lee's original works. That leaves the residual clause: "any other form in which a work may be recast, transformed, or adapted." None of these words fits what A.R.T. did. Lee's works were not "recast" or "adapted". "Transformed" comes closer and gives the ninth circuit some purchase for its view that the permanence of the bond between art and base matters. Yet the copyrighted note cards and lithographs were not "trans-

formed" in the slightest. The art was bonded to a slab of ceramic, but it was not changed in the process. It still depicts exactly what it depicted when it left Lee's studio. See William F. Patry, *Copyright Law and Practice* 823–24 (1994) (disapproving *Mirage Editions* on this ground).[1] If mounting works a "transformation," then changing a painting's frame or a photograph's mat equally produces a derivative work. Indeed, if Lee is right about the meaning of the definition's first sentence, then *any* alteration of a work, however slight, requires the author's permission. We asked at oral argument what would happen if a purchaser jotted a note on one of the note cards, or used it as a coaster for a drink, or cut it in half, or if a collector applied his seal (as is common in Japan); Lee's counsel replied that such changes prepare derivative works, but that as a practical matter artists would not file suit. A definition of derivative work that makes criminals out of art collectors and tourists is jarring despite Lee's gracious offer not to commence civil litigation.

If Lee (and the ninth circuit) are right about what counts as a derivative work, then the United States has established through the back door an extraordinarily broad version of authors' moral rights, under which artists may block any modification of their works of which they disapprove. No European version of *droit moral* goes this far. Until recently it was accepted wisdom that the United States did not enforce any claim of moral rights; even bowdlerization of a work was permitted unless the modifications produced a new work so different that it infringed the exclusive right under § 106(2). Compare *WGN Continental Broadcasting Co. v. United Video, Inc.*, 693 F.2d 622 (7th Cir.1982), with *Gilliam v. American Broadcasting Companies, Inc.*, 538 F.2d 14, 24 (2d Cir.1976). The Visual Artists Rights Act of 1990, Pub.L. 101–650, 104 Stat. 5089, 5123–33, moves federal law in the direction of moral rights, but the cornerstone of the new statute, 17 U.S.C. § 106A, does not assist

---

1. Scholarly disapproval of *Mirage Editions* has been widespread. Goldstein § 5.3 at 5:81–82; Nimmer & Nimmer § 3.03; Wendy J. Gordon, *On Owning Information: Intellectual Property and the Restitutionary Impulse*, 78 Va. L. Rev. 149, 255 n. 401 (1992).

Lee. Section 106A(a)(3)(A) gives an artist the right to "prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation". At oral argument Lee's lawyer disclaimed any contention that the sale of her works on tile has damaged her honor or reputation. What is more, § 106A applies only to a "work of visual art", a new term defined in § 101 to mean either a unique work or part of a limited edition (200 copies or fewer) that has been "signed and consecutively numbered by the author". Lee's note cards and lithographs are not works of visual art under this definition, so she could not invoke § 106A even if A.R.T.'s use of her works to produce kitsch had damaged her reputation. It would not be sound to use § 106(2) to provide artists with exclusive rights deliberately omitted from the Visual Artists Rights Act. We therefore decline to follow *Muñoz* and *Mirage Editions*.[2]

AFFIRMED.

2. Because this opinion creates a conflict among the circuits, it has been circulated to all judges in active service. See Circuit Rule 40(e). No judge requested a hearing en banc.