**Babak SOBHANI, Plaintiff,**

v.

**@RADICAL.MEDIA, INC., et al., Defendants.**

**No. CV 02–3594 SVW.**

United States District Court, C.D. California.

Feb. 11, 2003.

---

**13.** Clerk's Docket No. 9.

**14.** Clerk's Docket No. 15.

Jay M. Coggan, Brian Matthew Grossman, Law Offices of Jay M. Coggan, Los Angeles, CA, for Plaintiffs.

Henry J. Silberbeg, Timothy J. Martin, Brown Raysman Millstein Felder & Steiner, Los Angeles, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

WILSON, District Judge.

### I. INTRODUCTION

Plaintiff brings this action for copyright infringement under 17 U.S.C. §§ 101, et seq., against Defendant @radical.media ("Radical"), and several unnamed Defendants. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

Defendant Radical moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED.

### II. FACTUAL / PROCEDURAL BACKGROUND

Plaintiff Babak Sobhani ("Sobhani") is an aspiring commercial director. In late 2000 and early 2001, Sobhani conceived, directed and produced five short video advertisements ("Spec Commercials") as a means of promoting himself to prospective employers.

The Spec Commercials were styled along the lines of then preexisting commercials for Jack–in–the–Box restaurants, but contained new elements in that they spoofed the popular motion picture *Cast Away*, starring Tom Hanks.[1] In the movie, Hanks's character becomes stranded alone on a small island following an airplane crash. Hanks's character battles his isolation by speaking to a "Wilson" volleyball that survived the crash, and to which

---

1. The Court takes judicial notice of *Cast Away* and the general characteristics of Jack–in–the–Box commercials, pursuant to Federal Rules of Evidence Rule 201(b)(1).

Hanks ascribes anthropomorphic characteristics.

Certain Jack–in–the–Box advertisements feature a "Jack head" which speaks during the commercials, and some include a smaller "Jack antenna ball head," which does the same. Plaintiff's Spec Commercials portray a man (who looks much like Hanks's character) apparently stranded on a small island (which looks much like the beachfront from *Cast Away*). In certain spots, the man is clean-shaven and apparently newly arrived, while others portray the man as bearded and somewhat grizzled. Instead of a mute Wilson volleyball, however, Plaintiff's character interacts with a small, talking Jack head antenna ball, and discusses with the head certain Jack–in–the–Box products, such as the "Sourdough Jack" burger. Integrated into most, and at the end of all, of the Spec Commercials is actual footage copied from previously-aired Jack–in–the–Box commercials (including footage of the Sourdough Jack burger and dropping Jack–in–the–Box bags).

Plaintiff sent his Spec Commercials to between five and ten companies, including Defendant @radical.media ("Radical"). Radical received the tape containing the spots on November 2, 2001, and at least two Radical employees viewed the Spec Commercials on November 9, 2001. In January and February of 2002, Radical produced a commercial similar in many respects to Plaintiff's spots. In it, a bearded, haggard man is apparently stranded on a small island. As in Plaintiff's spots, the man and island closely resemble those in *Cast Away*. The man is antagonized by a Jack–in–the–Box antenna ball head, which extols the virtues of Jack–in–the–Box products, including the Sour-

dough Jack burger. The ad includes almost identical footage of the burger, and "dropping bags" at its conclusion. In a notable similarity, the antenna ball is at one point portrayed as affixed to the top of a stick the bearded man is attempting to use to start a fire—as it is in one of Plaintiff's spots.

Radical contends that the commercial it produced was independently conceived by an employee of advertising agency Kowloon Wholesale Seafood Company d/b/a/ Secret Weapon Marketing ("Secret Weapon") in late November 2001. (Memo of Points & Authorities in Support of Defendant's Motion for Summary Judgment ("Mot."), at 4.) Radical argues that it was hired simply to produce the commercial, which was created, written and directed by Secret Weapon, and that Radical contributed in no way to its creative content. (*Id.* at 4–5.) Moreover, Radical maintains that those Radical employees who worked on the Secret Weapon commercial had no knowledge of or exposure to Plaintiff's Spec Commercials. (*Id.* at 6–7.) In support of its theory of events, Radical submits declarations from relevant individuals at both Radical and Secret Weapon.

Plaintiff alleges that he registered both the Spec Commercials and Teleplays with the U.S. Copyright Office, and now sues for infringement of both.[2] (*See* FAC ¶¶ 7–9; 10–11.)

## III. DISCUSSION

Radical moves for summary judgment on two bases. First, it argues that the evidence of independent creation rebuts any inference of copying Sobhani may have raised. Second, Radical contends that Sobhani's Spec Commercials are unautho-

---

**2.** Radical contends, and Sobhani does not refute, that Radical was never provided access to the Teleplay. Indeed, Plaintiff seems to have abandoned his claim for infringement of the Teleplay. Accordingly, summary judgment is GRANTED for Defendant on that claim.

rized derivative works for which no copyright obtains.

## A. Summary Judgment Standards

Rule 56(c) requires summary judgment when the evidence, viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Tarin v. County of Los Angeles,* 123 F.3d 1259, 1263 (9th Cir.1997). Defendant as the moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). That burden may be met by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. at 2554. Once Defendant has met its initial burden, Rule 56(e) requires Plaintiff to go beyond the pleadings and identify facts that show a genuine issue for trial. *See id.* at 323–34, 106 S.Ct. at 2553; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## B. Independent Creation

■ In the absence of direct evidence, Plaintiff argues that Radical's undisputed access to his Spec Commercials, and their manifest similarity to Radical's actual product, are sufficient to raise an inference of copying. *See Baxter v. MCA, Inc.,* 812 F.2d 421, 423 (9th Cir.1987). Radical contends that its evidence of independent creation rebuts any inference of copying. *See*

*John L. Perry Studio, Inc. v. Wernick,* 597 F.2d 1308, 1310 (9th Cir.1979).

The interested declarations adduced by Radical do not alone justify summary judgment. Indeed, the Sixth Circuit reversed a grant of summary judgment in similar circumstances. *See Wrench LLC v. Taco Bell Corp.,* 51 F.Supp.2d 840, *rev'd on other grounds,* 256 F.3d 446 (6th Cir.2001). The *Wrench* court in dicta suggested that summary judgment *might* be appropriate on the basis of testimony by interested witnesses where the testimony shows creation *prior to* defendant's receipt of plaintiff's work, and where this timeline is corroborated by documentary proof. *Id.* at 855 (citing *McGaughey v. Twentieth Century Fox,* 12 F.3d 62, 64–65 (5th Cir.1994)). It was precisely such corroborated testimony of prior creation that led to summary judgment for defendants in *Weygand v. CBS, Inc.,* 1997 WL 377980, 43 U.S.P.Q.2d 1120, 1124–25 (C.D.Cal. May 22, 1997).

In this case, however, the testimony is that Secret Weapon created, and Radical produced, the commercial *after* Plaintiff allegedly submitted his work.[3] "Mere denial without substantial support would not ordinarily be thought sufficient" to rebut the strong inference raised by a combination of access and substantial similarity. *Overman v. Loesser,* 205 F.2d 521, 523 (9th Cir.1953).

## C. Unauthorized Derivative Work

Radical also claims that Plaintiff's Spec Commercials are unauthorized derivative works, and thus that Plaintiff cannot sue for their infringement.

---

**3.** Radical's admitted viewing and possession of Plaintiff's tape is sufficient to show access to his work, since those who actually viewed the Spec Commercials and those who produced the product for Secret Weapon "occup[ied] positions such that it is natural that information possessed by one would be imparted to the other." *Meta–Film Associates, Inc. v. MCA, Inc.,* 586 F.Supp. 1346, 1356 (C.D.Cal.1984); *see also Smith v. Little, Brown & Company,* 245 F.Supp. 451 (S.D.N.Y.1965), *aff'd,* 360 F.2d 928 (2d Cir. 1966).

A copyright holder's rights include the exclusive right to prepare derivative works. 17 U.S.C. 106(2). Under the Copyright Act:

A "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work."

17 U.S.C. § 101.

■ Of course, a work based upon an idea or kernel contained in another work may in some sense be "derivative" of the first work. To determine whether derivative works are within the definition of the statute, however, the Ninth Circuit has imported the similarity standard used to determine infringement. In essence, a "derivative work" under the Copyright Act is one which "would be considered an infringing work if the material which it has derived from a preexisting work had been taken without the consent of the copyright proprietor of such preexisting work." *Mirage Editions, Inc. v. Albuquerque A.R.T. Co.*, 856 F.2d 1341 (9th Cir.1988) (quoting 1 Nimmer on Copyright § 3.01 (1986)); *see also Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir.1984), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985). Accordingly, if a work is derived from a previous work, and the new work thereby infringes a copyright in the previous work, then the new work is an unauthorized (and infringing) derivative work. *Anderson v. Stallone*, 1989 WL 206431, at *8 (C.D. Cal. April 26, 1989); *see Litchfield v. Spielberg*, 736 F.2d 1352 (9th Cir.

1984); *Oddo v. Ries*, 743 F.2d 630 (9th Cir.1984); *Mirage Editions, Inc. v. Albuquerque A.R.T. Co.*, 856 F.2d 1341 (9th Cir.1988).

Because the Spec Commercials are derivative of the Jack–in–the–Box commercials, and in fact use a copyrighted character (the Jack–in–the–Box head), as well as actual footage from those commercials, they seem clearly to fall within the Act's broad definition of "derivative works."

### 1) *Fair Use*

■ Plaintiff in his papers did not deny that his Spec Commercials are unauthorized derivative works. (*See* Pl.'s Opp. at 13) (almost conceding as much). At hearing on this motion, however, Plaintiff for the first time appeared to contend that his use of copyrighted material constituted "fair use" under the Copyright Act. Consequently, the Court ordered the parties to brief the fair use issue. After careful consideration, the Court concludes that this late-raised "defense" is unavailing.

■ In determining whether given conduct constitutes infringement, the affirmative defense of fair use "permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Stewart v. Abend*, 495 U.S. 207, 236, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990). The common law doctrine of fair use was codified in the Copyright Act of 1976: "The fair use of a copyrighted work ... for purposes such as criticism, comment, news reporting, teaching[ ], scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107; *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 549, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) (Act intended to codify, and not elaborate upon or curtail, the fair use defense). But Plaintiff here is not being sued for his arguable infringement of Jack–in–the–Box copyrights, and

is not invoking the doctrine as a defense to infringement.[4] Rather, Plaintiff seeks to use Section 107 as a "sword" in order to vest copyright in an unauthorized derivative work, or at least to vest copyright in more of the work than that to which he would otherwise be entitled. Plaintiff does not cite any cases supporting this novel application of Section 107, and it is relatively clear that Congress did not contemplate such.

Moreover, the pertinent question is whether Plaintiff's works are unauthorized, derivative works under the Copyright Act. The derivative nature of the Spec Commercials, combined with the substantial unauthorized use of copyrighted Jack–in–the–Box elements, demonstrate that they are. This is true regardless whether Plaintiff could avoid liability under the Act if sued for infringement.

### 2) Copyright in Unauthorized Derivative Works

■ Because Plaintiff's Spec Commercials are unauthorized derivative works,

the disputed question before the Court is whether Plaintiff is entitled to copyright protection in the *new elements* of his works. Plaintiff cites section 103(a) of the Copyright Act, which provides in pertinent part that "protection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully." (*Id.*) Plaintiff construes this provision to mean that his "original contributions" to the commercials are entitled to copyright protection, even if the work as a whole is an unauthorized derivative work.[5] (*Id.*)

The Second Circuit (in dicta) and Nimmer on Copyright appear to agree substantially with Plaintiff's construction of the statutory language. *See Eden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27, 34 n. 6 (2d Cir.1982); 1–3 Nimmer on Copyright § 3.06 (2002). However, there is an important limitation suggested by both authorities and ignored entirely by Plaintiff: copyright protection does not ex-

---

**4.** Even if properly invoked—as a defense to an infringement action—it is questionable whether Plaintiff would have the benefit of the fair use defense. Plaintiff's use of copyrighted material to produce a commercial portfolio is wholly unlike the uses specifically contemplated in Section 107, such as criticism, news reporting and teaching. *See* 17 U.S.C. § 107. Moreover, the Court notes, without deciding, that it does not appear fair use would be warranted under the four factors prescribed by the statute. *Id.*

**5.** Plaintiff's statement that his use is not "unlawful" under the Copyright Act is simply wrong. (*See* Opp. at 13 n. 1.) Plaintiff relies on *JBJ Fabrics, Inc. v. Brylane, Inc.,* 714 F.Supp. 107 (S.D.N.Y.1989) for the proposition that "[u]nauthorized use is not equivalent to 'unlawful' use." (Opp. at 13 n. 1.)

First, the *JBJ Fabrics* court's statement in this regard appears to be based on a misreading of the Second Circuit's dictum in *Eden Toys, supra,* which made no such observation. Rather, the *Eden Toys* court in the relevant footnote finds as a factual matter that the

derivative use at issue *was authorized* and thus not unlawful. Indeed, the court specifically stated that "It is true that if Eden did not have Paddington's consent to produce a derivative work based on Paddington's copyrighted illustrations, its derivative copyrights would be invalid . . . ." 697 F.2d at 34 n. 6.

Second, the *JBJ Fabrics* court did not suggest the cited statement was a proposition of general applicability. Rather, the court illustrated its conclusion with the example of a derivative work based upon a pre-existing work which itself is not the subject of copyright. *Id.* at 110. In such a case, the derivative use could be described as "unauthorized," but it is not "unlawful" under the Act since the original work is not protected by copyright. In this case, however, the preexisting work *is* the subject of a valid copyright. Its unauthorized use constitutes classic infringement (aside from a potential fair use defense) and is, therefore, unlawful under the Act.

tend "to derivative works if the pre-existing work *tends to pervade* the entire derivative work." Nimmer at § 3.06 (emphasis added); *Eden Toys,* 697 F.2d at 34 n. 6 (quoting Nimmer).

Thus, the court in *Anderson v. Stallone* held that a spec script for a fourth *Rocky* movie (building from the characters and plot of the previous three) was pervaded by copyrighted characters from the first three movies, and thus not entitled to copyright protection. 1989 WL 206431, at *5, 8–11 (April 25, 1989).

Looking to section 103(a)'s legislative history, the court in *Anderson* went further, concluding that the exception could not reasonably be applied to derivative works at all, but rather is limited to compilations:

> Section 103(a) allows an author whose authorship essentially is the arrangement or ordering of several independent works to keep the copyright for his arrangement even if one of the underlying works he arranged is found to be used unlawfully. The infringing portion would be easily severable and the scope of the compilation author's own work would be easily ascertainable.

*Id.,* at *11.

Likewise, the Seventh Circuit recently suggested that no copyright obtains in any portion of an unauthorized derivative work. *Pickett v. Prince,* 207 F.3d 402 (7th Cir.2000). Writing for a unanimous panel, Judge Posner concluded that section 103(a) should not be read "as qualifying the exclusive right of the owner of a copyright of the original work to make derivative works based on that work . . . ." *Id.* at 406. Rather, "[s]ection 103(a) means only . . . that the right to make a derivative work

does not authorize the maker to incorporate into it material that infringes someone else's copyright." *Id.* The *Pickett* court explicitly rejected the dicta in *Eden Toys, Inc.,* 697 F.2d at 34 n. 6 (suggesting that copyright might subsist in a derivative work making unauthorized use of other copyrighted work, provided the original work does *not* "pervade" the derivative work). *Id.* Judge Posner concluded that this principle, "if taken seriously (which it has not been), would inject enormous uncertainty into the law of copyright and undermine the exclusive right that section 106(2) gives the owner of the copyright on the original work." [6] *Id.*

The Court need not reconcile these potentially conflicting authorities. Copyrighted Jack–in–the–Box commercial footage, and, particularly, the Jack antenna ball head character, are integrated into and integral to Plaintiff's Spec Commercials. Indeed, Plaintiff's counsel at hearing on this Motion specifically stated that it would be impossible to compare the works at issue in this case without reference to the Jack head.

Because copyrighted work pervades the derivative work, and because Plaintiff used the previous work without authorization, no copyright protection is afforded under either *Eden Toys* or *Pickett.*

This conclusion highlights an additional reason why Plaintiff's claims likely fail. Even assuming Plaintiff is entitled to copyright protection in certain remaining elements of his Spec Commercials, the residuum seem insufficient to allow Plaintiff to prevail on his claims. "Although summary judgment is not highly favored on questions of substantial similarity in copyright

---

**6.** This was arguably dicta, however, since the facts of *Pickett* suggest that the preexisting work *did* pervade the new work. In that case, plaintiff made a guitar roughly in the shape of the copyrighted symbol by which The Artist Formerly Known as Prince briefly identified himself. Under any reasonable definition of "pervade," the symbol pervaded a guitar designed to look like that symbol. *Pickett,* 207 F.3d at 407.

cases, summary judgment is appropriate if the court can conclude, after viewing the evidence and drawing inferences in a manner most favorable to the non-moving party, that no reasonable juror could find substantial similarity of ideas and expression ...." *Shaw v. Lindheim,* 919 F.2d 1353, 1355 (9th Cir.1990); *Kouf v. Walt Disney Pictures & Television,* 16 F.3d 1042, 1045 n. 3 (9th Cir.1994) (affirming grant of summary judgment on issue of substantial similarity, and rejecting the contention that *Shaw v. Lindheim* "either prohibits summary judgment in copyright cases or creates a heightened standard").

If the proprietary Jack–in–the–Box elements are ignored, all that remains is a largely unoriginal and elementary spoof of the (copyrighted) *Cast Away* movie. Since Plaintiff does not argue that the dialog employed in Radical's commercial is similar in any respect to that authored by Plaintiff, (*see* Opp. at 5.), the only remaining similarities owe to the commercials' common *Cast Away* derivation. And since the mere *idea* of placing Jack–in–the–Box characters and footage in a *Cast Away* context is, of course, not copyrightable, there would remain virtually no independent similarity. Because this issue is not necessary to the Court's holding, however, the Court refrains from deciding it.

## IV. CONCLUSION

Therefore, Defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.